**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| STEEL, LLC, a Georgia Limited Liability Company, | |
| Plaintiff, | Civil Action No. |
| v. | |
| ARCHER WESTERN CONSTRUCTION, LLC, an Illinois Limited Liability Company | |
| and | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Company | |
| Defendants. | |

**COMPLAINT**

Steel, LLC ("Steel") hereby sets forth its Complaint against Archer Western Construction, LLC ("Archer Western") and Travelers Casualty and Surety Company of America ("Travelers"), and in support thereof, states as follows:

## I.    Introduction

1.    This is an action for breach of contract arising out of Steel's fabrication and erection of structural and miscellaneous steel on behalf of Archer Western, the

1

general contractor, for the Snapfinger Advanced Wastewater Treatment Facilities Expansion – Phase 2 (the "Project") for DeKalb County, Georgia ("Owner").  A true and correct copy of Steel's subcontract with Archer Western (the "Subcontract") is attached hereto as **Exhibit A**.

2.      Travelers provided a payment bond as surety on the Project.  A true and correct copy of the Payment Bond No. 106283847 ("Payment Bond") is attached hereto as **Exhibit B.**

3.      Per the original contract documents, Steel planned to perform its scope of work between November of 2016 and May of 2018. Due to causes outside the control of Steel, Archer Western and the Owner significantly delayed Steel's scope of work and Steel will not complete its work until May of 2021.

4.      Because of the delays outside of Steel's control and not contemplated by the parties at the time the Subcontract was entered into, Steel incurred a significant increase in costs for materials, storage, labor, overhead, and project management.

5.      Based on the foregoing, Steel has issued two change order requests (COR Nos. 23 and 26, attached hereto as **Exhibits C and D**, respectively).  COR No. 23 is for storage fees incurred by Steel in the amount of $24,635.00 and COR 26 is for Steel's increased material, fabrication labor, and erection costs incurred due

to the delays in the amount of \$2,207,065.96.[1]

6.     To date, Archer Western has refused to certify or approve COR Nos. 23 and 26.

7.     In addition, an issue arose on the Project pertaining to the beam-to-column flange moment connections resulting from the negligent and improper handling of the design and drawing approval process by Archer Western, the Owner, and the Engineer of Record, Parsons.  This additional failure by Archer Western and the Owner to adhere to the contract documents has resulted in additional, out-of-scope change order work in the amount of \$312,057 (See Steel's COR #47, attached hereto as **Exhibit E**) and engineering consultant fees in the amount of \$18,617.50.

8.     To date, Archer Western has refused to certify or approve COR No. 47.

9.     In sum, based on the foregoing, Steel is entitled to an increase in its Subcontract price (which also remains unpaid, including retainage) in the total amount of **\$2,562,375.46** as summarized below:

---

[1] Steel's original COR 26 reflects costs incurred for the uncontemplated and unreasonable delays as of the date Steel submitted the Change Order Request.  As set forth below, additional costs were incurred by Steel, and as such, Steel's delay claim as set forth in COR 26 has been revised to include the additional costs and damages incurred by Steel as a result of the uncontemplated delays on the Project that were outside the control of Steel.

| COR #26 (Delay Claim) | | |
|---|---|---|
| Item | Description | Cost |
| 1 | Material Increases | $469,458.86 |
| 2 | Labor Cost Increases | $416,112.93 |
| 3 | Joist and Metal Decking | $128,852.00 |
| 4 | Erection Cost Increase for New Erectors | $808,898.22 |
| | Total Direct Costs | $1,823,322.01 |
| 5 | Extended Project Management | $46,511.75 |
| 6 | Overhead and Profit | $273,498.30 |
| 7 | Sales and use tax | $41,881.76 |
| 8 | Bond | $21,852.14 |
| | Total Impact Costs | $2,207,065.96 |
| COR #23 (Storage Fees) | | |
| | | $24,635.00 |
| | TOTAL REVISED DELAY CLAIM | $2,231,700.96 |
| COR #47 (Moment Connections) | | |
| 1 | Change Order Work | $312,057.00 |
| 2 | Consultant Fees (as of 11/30/2020) | $18,617.50 |
| | TOTAL COR#47 | $330,674.50 |
| | TOTAL CLAIM AGAINST AW | $2,562,375.46 |

## II.    Parties

10.    Steel is a limited liability company organized under the laws of the State of Georgia with its principal place of business located in Scottdale, Georgia. Its sole member is a citizen of the State of Florida.

11.    Archer Western is a limited liability company organized under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois. Upon information and belief, its sole member is a citizen of the State of Illinois.

12.    Travelers is an insurance company organized under the laws of the State of Connecticut with its principal place of business located in Hartford, Connecticut.

### III.    Jurisdiction and Venue

13.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action involving an amount in controversy exceeding $75,000, exclusive of interests and costs, and the only cognizable claims stated in the Complaint are between citizens of different states.

14.    Venue for this action is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 90(a)(2) as a substantial part of the events or omissions giving rise to the claims occurred in, and the property that is the subject of the action is located in, DeKalb County, Georgia.

### IV.    Background Facts

A.    Project Background

15.    On August 5, 2015, DeKalb County entered into a contract ("Prime Contract") with Archer Western for Archer Western to serve as the general contractor for the Project.  A copy of the Prime Contract is attached hereto as **Exhibit F**.

16.    Prior to execution of the final subcontract between Archer Western and Steel on June 10, 2016 (*See* **Ex. A**), Archer Western issued a Notice to Proceed to Steel on October 13, 2015.

17.    Steel's scope of work on the Project was to "fully fabricate, deliver,

F.O.B. and install all structural steel and furnish all miscellaneous steel." *See* **Ex. A**.

18.     The Project included six buildings with the following tonnage of steel for each building:  (1) Dewatering Building (51 tons); (2) MBR Admin Building (210 tons); (3) MBR Process Building (1,221 tons); (4) Aeration Building – East and West (10 tons); (5) Headworks Building (95 tons); and (6) Chemical Building (18 tons).

19.     Based on the original project schedules issued by Archer Western, Steel anticipated fabricating and erecting all six buildings between November of 2016 and May of 2018.

B.     Project Delays Caused by Archer Western and the Owner

20.     Per the original schedule provided to Steel when it was negotiating its subcontract and pricing the work, Steel anticipated the following schedule for fabrication and erection for each of the six buildings:

   a.  Dewatering – December 2015 through January 2017
   b.  MBR Admin – March 2016 through August 2017
   c.  MBR Process – February 2016 through April 2018
   d.  Aeration – February 2016 through May 2018
   e.  Headworks – January 2016 through May 2018
   f.  Chemical – March 2016 through March 2018

21.     Despite the foregoing schedule contemplated at the time of the Subcontract, in 2016 the Owner suspended the Project indefinitely.

6

22.     The Project was continuously placed on hold over the last five years by the Owner and Archer Western which resulted in delaying and continuous stopping and re-starting of Steel's scope of work for each building on the Project.

23.     Ultimately, the delays resulted in the following extended durations for Steel's scope of work that were not anticipated that the time Steel entered into the Subcontract:

      a. Dewatering – March 2018 through May 2019
      b. MBR Admin – July 2018 through October 2019
      c. MBR Process – November 2018 through June 2020
      d. Aeration (East) – January 2020 through June 2020
      e. Aeration (West) – August 2020 through December 2020
      f. Headworks – February 2020 through August 2020
      g. Chemical – October 2019 through January 2021

24.     In sum, Steel's scope of work was delayed by Archer Western and the Owner for almost three years.

    C.    <u>Steel Places Archer Western on Notice of Cost Impacts Due to Delays</u>

25.     The Project was first suspended in 2016 delaying the commencement of Steel's work.

26.     On December 7, 2016, Steel sent a letter to Archer Western notifying it of "schedule delay cost impacts" including "the decision by Daunch & Hirschi, the steel erection sub-tier contractor for Steel, LLC, to terminate any further involvement in the project as they could not adhere to the terms of their subcontract

7

due to the schedule impact."  Steel further noted that this would result in a cost increase for erection and would submit a change order request once erection was re-priced.

27.     On January 27, 2017, Steel sent Archer Western a letter notifying it of increases in material and fabrication costs "resulting from the decision by the project Owner to place the Dewatering Building and the entire project on hold."

28.     On October 30, 2017, Steel submitted its original version of COR No. 23 for costs related to storage of materials that Steel was unable to deliver to the project site due to delays outside of the control of Steel (*See* **Ex. B**).  This COR was later revised in 2018 and 2019.

29.     On April 4, 2018, Steel sent Archer Western a letter notifying it of the "cost impact associated with the material storage resulting from the decision made by Archer Western to delay the start erection of Dewatering building."

30.     On April 25, 2018, Steel submitted a revised COR No. 23 for storage costs associated with additional delays to the Dewatering Building.  (*See* **Ex. B**).

31.     On August 15, 2018, Steel submitted its original COR No. 26 to Archer Western seeking an increase in its Subcontract amount for additional material, labor, and erection costs due to the delays of the Project outside of the control of Steel. (*See* **Ex. C**).

8

32.     On November 20, 2018, Steel sent Archer Western a letter notifying it of increased material and labor costs due to the "[o]verall Project Suspension from December 10, 2015 to April 3, 2016" and "[s]uspension of Dewatering Building from January 28, 2016 to March 21, 2017."

33.     On April 22, 2019, Steel sent Archer Western a complete claims package, enclosing COR Nos. 23 and 26, along with the above notices, formally submitting Steel's "Notice of Claim" based on the foregoing delays.

34.     On May 21, 2019, Archer Western notified Steel that it was "unable to certify this claim and submit it to the Owner" and requested additional documentation, which Steel provided.

35.     Throughout 2019, while the Project was still being continuously delayed by Archer Western and the Owner, Archer Western refused to certify Steel's claim or execute Steel's change order requests for its increased costs due to delays outside of the control of Steel.

36.     On October 18, 2019, Steel sent Archer Western a letter notifying it of cost and schedule impacts due to the "progress of the foundation concrete on the Process Building that is not in place that will allow for the north side trusses and infill steel required for steel erection to proceed."

37.     In addition to the foregoing delays, beginning in late 2019 and

continuing through 2020, Archer Western failed to timely issue payment to Steel for work that Steel performed on the Project.

38.    On January 24, 2020, Steel, through counsel, resubmitted its claim for COR Nos. 23 and 26 arising out of the foregoing delays.

39.    On March 27, 2020, Steel, through counsel, presented its claim via teleconference to counsel for Archer Western and the Owner.   During the teleconference, the Owner instructed Steel to resubmit its claim only for costs that Steel had actually accrued as opposed to estimated increased costs to complete the Project.

40.    On April 7, 2020, pursuant to instructions from the Owner, Steel resubmitted its claim package, with complete backup documentation, for the "increased costs accrued by Steel through April 1, 2020."

41.    On May 1, 2020, Archer Western sent Steel a letter again informing it that it would not certify Steel's claim.

42.    To date, Archer Western has failed to adequately review, assess, and process Steel's COR Nos. 23 and 26 for costs incurred by Steel for storage and increased material, fabrication, and erection costs.

43.    Based on the foregoing, Steel is owed a sum of $24,635 for COR No. 23 for storage fees and a sum of $2,207,065.96 for COR No. 26 for its increased

material and labor costs, as follows:

| COR #26 (Delay Claim) | | |
|---|---|---|
| Item | Description | Cost |
| 1 | Material Increases | $469,458.86 |
| 2 | Labor Cost Increases | $416,112.93 |
| 3 | Joist and Metal Decking | $128,852.00 |
| 4 | Erection Cost Increase for New Erectors | $808,898.22 |
| | **Total Direct Costs** | **$1,823,322.01** |
| 5 | Extended Project Management | $46,511.75 |
| 6 | Overhead and Profit | $273,498.30 |
| 7 | Sales and use tax | $41,881.76 |
| 8 | Bond | $21,852.14 |
| | **Total Impact Costs** | **$2,207,065.96** |
| COR #23 (Storage Fees) | | |
| | | **$24,635.00** |

D.    Additional Out-of-Scope Change Order Work Directed by Archer Western Arising out of the Owner and Engineer of Record's Improper Handling of the Design and Drawing Approval Process

44.    Per the Contract documents, the Owner and the Engineer of Record are responsible for the design and drawing approval process for the Project.

45.    On or about December 1, 2015, Steel submitted RFI 20, which turned into AW RFI 73, asking about which design code to use for all buildings.

46.    The engineer of record, Parsons, responded stating that "Moment connections beam to column per spec 05120 section 2.03D are designed per AISC section 11.2 which used LRFD capacity method" which indicates that the details on the drawings for the beam to column connection are fully designed.

47.    On or about March 23, 2016, Steel submitted initial shop and erection

11

drawings, asking the approver to verify two weld sizes that matched the requirements of the design drawing, but needed to be confirmed.

48.    On or about July 20, 2016, Steel received the March 23, 2016 submittal back from approval with the approver responding for the general contractor to coordinate between the detailer and the connections engineer.

49.    On or about August 25, 2016, Steel resubmitted its drawings for the MBR Admin building.

50.    On or about September 30, 2016, the foregoing submittal package was returned with a note by the approver stating that there was a deviation between section 6/E2609 and 6/S-s99.

51.    On or about November 10, 2016, Steel once again resubmitted drawings, which included drawing E2609 (the drawing at issue) and clouded a note to the engineer of record that "Steel had provided beam to column flange moment connection per detail 3/S-s08.78K.  **Hence, we are not providing design calculations.  We have detailed per the structural drawing.**"  This package also included shop drawings 2603 and 2609 containing the same note to the engineer of record.

52.    In addition to the foregoing, on March 23, 2016, July 14, 2016, July 27, 2016, November 11, 2016, and December 14, 2016, Steel submitted connection

calculations for the MBR Admin building, which contained over 500 pages of calculations with reference plans.  At no point in time did the engineer of record request calculations for the beam to column flange moment connections at the floors.

53.     On or about January 5, 2017, Steel received the near 588 pages of calculations back from the engineer of record, which were marked "no exceptions taken."

54.     On or about June 2, 2017, Steel once again submitted its MBR Admin drawings, which included the same notes to the engineer of record that Steel was not providing design calculations.

55.     On or about June 26, 2017, Archer Western returned the June 2, 2017, stating that it was having technical difficulties and could not send back the complete package.

56.     The foregoing email from Archer Western did include the complete package and did not include drawing E2609 and, according to Archer Western, the approver did not make any marks or comments on the drawing.  Upon information and belief, the shop drawings with the same note that Steel was not providing connection calculations was also not commented on by the engineer of record.

57.     On or about August 11, 2017, Steel resubmitted its drawings for the MBR Admin Building, stating how the beam to column flange moment connection

was provided and that Steel – per the specifications and design drawings – was not providing design calculations.

58.    On or about August 29, 2017, the August 11, 2017 submittal was returned with "No Exceptions Taken."

59.    Fabrication of the steel for the Administrative Building was completed in December of 2018, with the steel being stored on a trailer until May of 2019, which is when Steel delivered and started erecting the steel.  The final sign-off by the on-site inspector for the steel was on October 10, 2019.

60.    On January 27, 2020, over three months after the steel was erected, welded, decked, and inspected, Steel received a package of drawings that were noted "amend and resubmit", specifically requesting drawings and calculations for the end plate connection shown on drawing E2609.

61.    On May 1, 2020, Steel sent Archer Western a letter notifying it of the foregoing and informing Archer Western that had the Owner and the engineer of record properly followed the drawing approval process, any revisions required for the connections at issue could have been done prior to fabrication and erection and in Steel's fabrication shop.

62.    Steel further informed Archer Western that because of the foregoing failures by the Owner and engineer of record and/or Archer Western, addressing this

14

issue in the field would be very time consuming and costly and expressly put Archer Western on notice that Steel would not be responsible for any cost associated with demolition required to access the connections.

63.     On June 22, 2020, Archer Western issued a "Notice of Default", alleging that Steel was delaying the schedule by failing to provide complete calculations for the missing moment connection for the MBR Admin Building.

64.     On June 26, 2020, Steel responded to Archer Western's notice of default, reiterating the foregoing failures by the Owner, Parsons, and Archer Western regarding that the moment connection approval process.

65.     On July 20, 2020, Steel issued Change Order Request No. 47 (*See* **Ex. E**) for its increased costs associated to fix the moment connection issue caused by the Owner, Parsons, and Archer Western.

66.     On or about August 21, 2020, because of the foregoing failures by the Owner, Parsons, and Archer Western, Steel was required to hire Mr. Kirk Harman to act as its expert regarding the moment connection issue.

67.     Mr. Haman concluded that there were discrepancies in the contract documents and approval of shop drawings.

68.     Mr. Harman concluded that Parsons' approval of the shop drawings resolved the discrepancy and caused Steel to proceed with their work based on the

resolution /approval of the drawings.

69.    Mr. Harman concluded that there were late changes to the connection design and inadequate information on the structural drawings.

70.    Mr. Harman concluded that these changes were of no fault of Steel.

71.    Mr. Harman concluded that these late changes caused Steel to incur substantial costs for field modifications to previously approved, fabricated, and erected structural steel.

72.    Archer Western directed Steel to proceed with the change order work regarding the moment connections, but nonetheless failed to executed Steel's COR No. 47.

73.    On various occasions, Steel requested adequate assurances from Archer Western that it would be paid for COR No. 47 before it would commit to performing the work.  Archer Western refused to issue any adequate assurances of payment to Steel.

74.    On or about October 29, 2020, Steel notified Archer Western that it would proceed with out-of-scope work pertaining to the moment connection rework, under protest, and under a complete reservation of rights to seek payment of COR No. 47.

75.    To date, Archer Western has refused to approve and execute COR No.

47 in the amount of $312,057.  Steel has also incurred costs in the amount of $10,170 for the services of Mr. Harman.  All of the foregoing costs are a direct result of the Owner, Parsons, and Archer Western failing to properly follow the drawing approval process and failing to adhere to the contract documents.

      E.  <u>Travelers Payment Bond on the Project</u>

      76.    On June 24, 2015, Travelers, Archer Western and the Owner entered into the Payment Bond agreement for the Project.  *See* **Ex. B.**

      77.    Travelers agreed to be bound as surety to Archer Western to the Owner in the penal sum of $187,860,380.00 on the Project.  *See Id.*

      78.    The Payment Bond contract provided that in the event a "Claimant . . . furnishing labor, services, or materials used, or reasonably required for use, in the performance of the [Prime] Contract" such as Steel, files a claim "against the [Owner]," then "[Travelers] shall satisfy or discharge the claim promptly upon written notice from the [Owner], either by bond or as otherwise provided in the [Prime] Contract.  *See Id.*

      79.    On April 30, 2021, Steel provided notice of its bond claim regarding its claims against Archer Western and the Owner for its unpaid performance on the Project.  *See* **Exhibit G.**

      80.    To date, Travelers has failed to satisfy Steel's bond claim.

## V.   COUNT I – BREACH OF CONTRACT
### (Against Archer Western)

81.     Steel incorporates Paragraphs 1 through 80 as if fully set forth herein.

82.     Archer Western and Steel entered into a contract in which Steel agreed to provide steel fabrication and erection work for the Project in exchange for payment by Archer Western in the original contract amount of $8,840,000.  (*See* **Ex. A**).

83.     Steel has fully performed its steel fabrication and erection work on the Project, and satisfied all conditions precedent under the contract.

84.     During the Project, Steel was unreasonable delayed by Archer Western and the Owner, through no fault of its own, and these unreasonable delays were not contemplated by Steel or Archer Western at the time the Subcontract was executed.

85.     Based on these delays, and pursuant to the terms of Subcontract, Steel timely issued to Archer Western COR No. 23 in the amount of $24,635, COR No. 26 in the amount of $2,207,065.96 for the additional fabrication labor, material, and erection costs incurred by Steel on the Project.

86.     To date, Archer Western has refused to certify or approve COR No. 23 or COR No. 26.

87.     During the Project, Steel also incurred additional costs for change order work associated with rework of moment connections caused by the Owner, Parsons,

18

and Archer Western's failure to properly follow the drawing approval process and failure to adhere to the contract documents.

88.    Based on the foregoing failures by the Owner, Parsons, and Archer Western to properly follow the drawing approval process and to adhere to the contract documents, Steel incurred additional change order work costs in the amount of $312,057 (COR No. 47) and consultant fees in the amount of $18,617.50.

89.    Pursuant to the terms of the Subcontract, Steel timely issued COR No. 47 to Archer Western for the additional costs incurred by Steel resulting from the Owner, Parsons, and Archer Western's failure to properly follow the drawing approval process and failure to adhere to the contract documents.

90.    To date, Archer Western has refused to certify or approve COR No. 47.

91.    To date, Archer Western has failed to pay Steel its unpaid contract balance and retainage.

92.    Archer Western has material breached the Subcontract by: (1) failing to approve and execute valid change order requests; (2) failing to pay Steel for costs reasonably and properly incurred by Steel for its work on the Project; (3) failing to pay Steel its unpaid contract balance and retainage; and (4) failing to adhere to the contract documents in properly following the drawing approval process.

93.    Based on Archer Western's breaches, Steel has incurred damages in

19

excess of its contract price, to date, in the amount of $2,562,375.46 plus its current outstanding amounts due and owing for its original contract balance and unpaid retainage.

**WHEREFORE**, Steel, LLC hereby requests judgment in its favor, and against Archer Western Construction, LLC, and Travelers Casualty and Surety Company of America, and hereby requests that it be awarded the following:

1. Its unpaid contract balance and retainage;
2. $24,635 for COR No. 23, plus interest;
3. $2,207,065.96 for COR No. 26, plus interest;
4. $312,057 for COR No. 47, plus interest;
5. $18,617.50 for the consulting services of Kirk Harman;
6. Its attorneys' fees and legal costs; and
7. Any other relief that this Court deems reasonable and just.

## VI.   COUNT II – STATUTORY ACTION AGAINST THE PAYMENT BOND PURSUANT TO O.C.G.A. § 36-91-93
### (Against Travelers)

94.   Steel incorporates Paragraphs 1 through 80 as if fully set forth herein.

95.   Archer Western, as principle, and the surety Travelers executed the payment bond for the protection of all persons, including Steel, who furnished labor and/materials for the Project.

96.   Steel is a proper claimant under the payment bond, as it furnished labor and/or materials for the Project through a valid subcontract, and is in a class of those entitled to a right of action under the payment bond.

97. Pursuant to the terms of the payment bond, Archer Western and Travelers are jointly and severally liable to pay Steel for all work performed and all services provided by Steel to the Project for which Steel has not been paid.

98. In violation of Georgia law, Archer Western has failed to pay Steel promptly for all amounts due for furnishing labor and materials for the Project.

99. Amounts remain due and owing to Steel from Archer Western under the Purchase Order, despite Steel having made demands upon Archer Western for payment of such amounts owed, thus rendering Travelers liable to Steel under the payment bond for these amounts.

100. In accordance with O.C.G.A. §36-91-93, Steel formally notified Travelers of its claim under the Project and demanded payment for the amounts due and owed.

101. In accordance with O.C.G.A. §36-91-93, Steel has filed this action within 90 days from the date on which Steel performed the last of the labor or furnished or supplied the last of the material on the Project but less than one year from such date.

102. Any and all conditions precedent to bringing an action on the payment bond have been satisfied or previously waived.

103.   Steel is entitled to judgment against the Travelers for all amounts due totaling $2,514,113.72 in accordance with its obligations under the payment bond.

**WHEREFORE**, Steel, LLC hereby requests judgment in its favor, and against Archer Western Construction, LLC, and Travelers Casualty and Surety Company of America, and hereby requests that it be awarded the following:

1. Its unpaid contract balance and retainage;
2. $24,635 for COR No. 23, plus interest;
3. $2,207,065.96 for COR No. 26, plus interest;
4. $312,057 for COR No. 47, plus interest;
5. $18,617.50 for the consulting services of Kirk Harman;
6. Its attorneys' fees and legal costs; and
7. Any other relief that this Court deems reasonable and just.

Respectfully submitted this 19th day of May, 2021.

> Respectfully submitted,
> **GORDON REES SCULLY MANSUKHANI LLP**
>
> */s/ Jeremy D. Stallman*
> Jeremy D. Stallman, Georgia Bar No. 119441
> 55 Ivan Allen Jr. Blvd. N.W., Suite 750
> Atlanta, GA 30308
> T: (404) 978-7317
> jstallman@grsm.com
>
> */s/ Angela M. Richie*
> Angela M. Richie (*pro hac vice admission forthcoming*)
> Angelo DiBartolomeo (*pro hac vice admission forthcoming*)
> 325 W. Main Street, Suite 2300
> Louisville, Kentucky 40202
> T: (502) 371-1251
> arichie@grsm.com
> adibartolomeo@grsm.com
> *Counsel for Plaintiff, Steel, LLC.*

22